# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

THOMAS G. WILKINSON,

        Plaintiff,

  v.                                   Case No. 06-C-1288

WELLS FARGO BANK MINNESOTA *et al.*,

        Defendants.

## ORDER GRANTING MOTIONS TO DISMISS

Plaintiff Thomas G. Wilkinson's central allegation in this action appears to be that numerous defendants have illegally attempted to collect a debt from him. Plaintiff's initial filing included a lengthy complaint, exhibits and filings from state court proceedings, a counterclaim, an answer to a counterclaim, interrogatories, motions for default judgment and summary judgment, motions to vacate judgment and compel discovery, and a petition for a writ of mandamus. (Dkt. ##4-10.) In light of this massive, nearly incomprehensible initial filing of roughly 200 pages, the court, when addressing plaintiff's motions for leave to proceed *in forma pauperis* and for appointment of counsel, directed his attention to the requirements under Fed. R. Civ. P. 8 for a short and plain statement of his claims. Plaintiff's response was merely to refile his 45-page complaint. In any event, two groupings of named defendants have filed motions to dismiss, and both motions are ready for disposition.[1] For the reasons set forth below, the motions will be granted.

---

[1] In response to defendants' motions to dismiss, plaintiff filed a "Writ of Right for Trespass Demanding Injunction Agaisnt [sic] Citibank Financial Mortgage Co. Inc., and Attorneys to this Action," which appears to be more a continuation of the complaint than a response to the motions to dismiss. The Citi defendants filed a reply brief; the other defendants did not.

1

## FACTUAL BACKGROUND

Plaintiff Thomas G. Wilkinson is a Wisconsin resident. Plaintiff does not allege the citizenship of any corporate defendants except Gray & End Law Firm, LLP, whose real name is apparently Gray & Associates, LLP ("Gray"). (Mot. to Dismiss, Dkt. #22, at 1.) Gray is alleged to be a law firm doing business in Milwaukee, and engaged in debt collection. Other corporate defendants are Wells Fargo Bank Minnesota, N.A. ("Wells Fargo"); National Association Company[2]; Litton Loan Servicing, LP ("Litton," and incorrectly named as Litton Loan Servicing Co.); CitiBank (South Dakota), N.A. ("CitiBank SD" and incorrectly named as "CitiBank N.A. PKA CitiBank South Dakota N.A."); and CitiMortgage, Inc. ("CitiMortgage" and incorrectly named as "CitiFinancial Mortgage Co., CitiBank N.A. n/k/a/ Associates Home Equity Services, Inc."). For convenience, I shall also refer to the latter two defendants collectively as "the Citi defendants." Plaintiff also names several natural persons as defendants: Jennifer J. Hoffman, allegedly of the Milwaukee law firm of Bass & Moglowsky, S.C.; Steven E. Zablocki, allegedly an attorney at Gray; and several John/Jane Doe defendants alleged to be debt collectors employed by Gray or Wells Fargo.

The skeletal background of this action is as follows.[3] Plaintiff's account with Wells Fargo apparently became delinquent. On numerous occasions, plaintiff disputed this delinquent account and requested that Wells Fargo provide him with documentary evidence of it. Wells Fargo allegedly did not respond to his requests, and in January 2006 initiated a foreclosure on plaintiff's homestead.

---

[2] Wells Fargo argues that no such entity as the National Association Company exists. (Br. in Opp., Dkt. #23, at 3.)

[3] The court takes some of these facts from the supporting brief of defendants Wells Fargo, *et al.*, because plaintiff's filings are spotty and/or unclear as to certain basic factual allegations. (Br. in Supp. of Mot. to Dismiss, Dkt. #23, at 2.)

2

Wells Fargo then sold or assigned the debt to Gray, and plaintiff continued to dispute the debt with Gray and requested documentary evidence from Gray. Like Wells Fargo, Gray allegedly did not respond. In June 2006 a judgment of foreclosure was entered and thereafter the property was sold at a sheriff's sale and confirmed by the Brown County Circuit Court, Case No. 06CV207. Plaintiff claims he has yet to receive any validation of the alleged delinquent account or any documentary evidence as requested.

To the extent the complaint is comprehensible, plaintiff appears to be attacking the state court foreclosure judgment by claiming defendants violated the following: the Fair Debt Collections Practice Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*; a federal criminal mail-fraud statute, 18 U.S.C. § 1341; certain provisions of the Postal Service Act concerning non-mailable material and false representations, 39 U.S.C. §§ 3001 and 3005; two seemingly non-existent Wisconsin laws, "Wisconsin Title 13, Chapter 494 and Wisconsin Title 13, Chapter 501 et seq." (Compl. at 10); and the RICO Act, 18 U.S.C. § 1961 *et seq*. He also appears to claim infliction of emotional distress. (Compl. ¶ 41.)

The gist of the complaint as to Wells Fargo and Gray seems to be that they did the following: attempted to collect the debt without showing proof of its existence, misrepresented the character and amount of the debt through illegal documents and otherwise, used the court system to try to coerce plaintiff into paying the debt, and used the mail system to further their efforts, which included sending intimidating communications and misleading plaintiff. Plaintiff claims Wells Fargo is liable for Gray's actions under theories of respondeat superior and apparent authority. Plaintiff also claims Wells Fargo's charter violates federal law by charging usurious interest. As to Gray and Zablocki, plaintiff alleges they misrepresented themselves as a law firm and attorney, respectively; filed illegal documents; engaged in mail fraud; continued to attempt to collect after

3

plaintiff disputed the amount due; submitted negative information to credit bureaus while the dispute was ongoing; and threatened suit after plaintiff requested validation of the debt. He also alleges Gray instructed Zablocki to lie under oath in the state action. The Citi defendants' alleged liability is not clear. Plaintiff claims they are "affiliated, and can act for one-another [sic], in their own individual corporate capacity's [sic], to take the place of Wells Fargo Bank Minnesota, . . . to cover for the other, their fraudulent activities, in this criminal behavior . . . . (Compl. at 13.) Beyond that, plaintiff makes no substantive allegations of wrongdoing by the Citi defendants.

The Citi defendants have moved to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6). Defendants Wells Fargo, Litton, Zablocki, and Gray have moved pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(5), and 12(b)(6) for an order dismissing the complaint with costs on the grounds that the court lacks subject matter jurisdiction, or alternatively, that plaintiff has not rendered sufficient service of process, or alternatively, that plaintiff has failed to state a claim upon which relief can be granted.

**ANALYSIS**

**I. Motion to Dismiss Standard**

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). Dismissal of an action under such a motion is warranted if the plaintiff can prove no set of facts in support of his claims that would entitle him to relief. *Scott v. City of Chicago*, 195 F.3d 950, 951 (7th Cir. 1999); *see Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The essence of a Rule 12(b)(6) motion is not that the plaintiff has pleaded insufficient facts; it is that even assuming all of his facts are accurate, he has no legal claim. *Payton v. Rush-Presbyterian-St. Luke's Med. Ctr.*, 184 F.3d 623, 627 (7th Cir.

4

1999).  In ruling on a motion to dismiss under Rule 12(b)(6), a court views all of the facts alleged in the complaint, as well as any inferences reasonably drawn from them, in the light most favorable to the plaintiff.  *Mosley v. Klincar*, 947 F.2d 1338, 1339 (7th Cir. 1991).

Federal notice-pleading requires only that a plaintiff set out a "short and plain" statement of the claim providing a defendant with fair notice of the claim; fair notice does not require every element of a legal theory to be specifically set forth.  *Scott*, 195 F.3d at 951.  Nor must a plaintiff plead all of the facts necessary to support the elements of his claim.  *Walker v. Thompson*, 288 F.3d 1005, 1007 (7th Cir. 2002).  "All that need be specified is the bare minimum facts necessary to put the defendant on notice of the claim so that he can file an answer."  *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002).  In an alternative phrasing of this minimal burden, the Seventh Circuit has held that a complaint is sufficient "if it notifies the defendant of the principal events."  *Hoskins v. Poelstra*, 320 F.3d 761, 764 (7th Cir. 2003).  Finally, conclusions or vague language are acceptable so long as a defendant can understand the claim.  *See Muick v. Glenayre Elecs.*, 280 F.3d 741, 744 (7th Cir. 2002).

As to the all defendants, plaintiff has failed the most basic pleading requirement, namely, to set forth "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).  While the court realizes that plaintiff is proceeding pro se, and that the pleadings of a pro se plaintiff are to be given a liberal construction, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), a pro se plaintiff is nevertheless bound to comply with the rules governing the filing of a complaint.   Moreover, the court drew plaintiff's attention to this rule in its order denying his motions to proceed *in forma pauperis* and for appointment of counsel, and yet plaintiff simply refiled his complaint, sans exhibits and extraneous documents.  It is not the duty of the court or the defendants to sift through a massive filing in an attempt to discern a "short and plain

5

statement of the claim." For this reason, courts routinely dismiss complaints on the ground that they are unintelligible. *United States ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003) (citation omitted).

In the interest of addressing plaintiff's concerns, however, the court will note several other major deficiencies in plaintiff's complaint. First, there are problems with some of the cited statutes and plaintiff's failure to state a claim under them. Plaintiff cites to "Wisconsin Title 13, Chapter 494 and Wisconsin Title 13, Chapter 501 *et seq*.," but these statutes do not exist. In addition, several of the cited federal statutes provide no private cause of action: 18 U.S.C. § 1341 (criminal mail fraud), 39 U.S.C. § 3001 *et seq*. (postal regulations), and 28 U.S.C. § 2461 (allowing government to bring civil action to recover statutory fines). Plaintiff also invokes the RICO Act, 18 U.S.C. § 1961 *et seq*., but he has not adequately pleaded a RICO violation, which is to include the elements of "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Slaney v. Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 597 (7th Cir. 2001). Lastly, plaintiff invokes a provision of the Fair Credit Billing Act, 15 U.S.C. § 1666, and the implementing Regulation Z, 12 C.F.R. Pt. 226, but he fails to allege the existence of an open-end credit relationship of the type governed by this provision.[4] *See Roybal v. Equifax*, 405 F. Supp. 2d 1177, 1180 (E.D. Cal. 2005) (holding that "the definition of 'creditor' as used in section 1666 only applies to creditors offering open end credit plans").

_____

[4] "The term 'open end credit plan' means a plan under which the creditor reasonably contemplates repeated transactions, which prescribes the terms of such transactions, and which provides for a finance charge that may be computed from time to time on the outstanding unpaid balance." *Jeffries v. Dutton & Dutton, P.C.*, No. 05 C 4249, 2006 WL 1343629, at *6 (N.D. Ill. May 11, 2006). To the extent that Wilkinson alleges a mortgage loan in the complaint, that loan creates a closed-end credit relationship that is not addressed by the statute.

6

Second, one may not bring claims under the FDCPA against creditors, as the FDCPA applies only to debt collectors.[5] *Randolph v. IMBS, Inc.*, 368 F.3d 726, 729 (7th Cir. 2004) ("A distinction between creditors and debt collectors is fundamental to the FDCPA, which does not regulate creditors' activities at all."); *Aubert v. Amer. Gen. Fin., Inc.*, 137 F.3d 976, 978 (7th Cir. 1998) ("Creditors who collect in their own name and whose principal business is not debt collection . . . are not subject to the Act."). The Citi defendants point out that they were acting as creditors, and plaintiff appears to admit as much. (Writ at 3 ("And at no time did I, ever claim that Citibank was a debt collector . . . .").) Furthermore, derivative liability, such as plaintiff alleges against Wells Fargo under theories of respondeat superior or apparent authority, does not attach to creditors under the FDCPA. *Pettit v. Retrieval Masters Credit Bureau, Inc.*, 211 F.3d 1057, 1059 (7th Cir. 2000) ("Individuals who do not otherwise meet the statutory definition of 'debt collector' cannot be held liable under the Act." (citation omitted)); *Doherty v. Citibank (South Dakota) N.A.*, 375 F. Supp. 2d 158, 162 (E.D.N.Y. 2005) ("[A] creditor that is not itself a debt collector is not vicariously liable [under the Act] for the actions of a debt collector it has engaged to collect its debts." (internal quotation and citation omitted)).

Third, under the *Rooker-Feldman* doctrine, federal district courts are not empowered to exercise appellate jurisdiction over state court judgments. *Exxon Mobil Corp. V. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283-85 (2005) (summarizing the namesake cases of the doctrine, *Rooker v.*

---

[5] An exception to this general rule arises under the so-called false name exception of the Act, that is, if the creditor, in the process of collecting his own debts, "uses any name other than his own that would indicate that a third person is collecting or attempting to collect such debts, if it pretends to be someone else or uses a pseudonym or alias, or if it owns and controls the debt collector rendering it the creditor's alter ego." *Mazzei v. Money Store*, 349 F. Supp. 2d 651, 659 (S.D.N.Y. 2004) (citing 15 U.S.C. § 1692a(6); *Maguire v. CitiCorp Retail Servs., Inc.*, 147 F.3d 232, 235 (2d Cir. 1998) (internal quotations omitted)).

*Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983)). The *Rooker-Feldman* doctrine "precludes lower federal court jurisdiction over claims seeking review of state court judgments . . . [because] no matter how erroneous or unconstitutional the state court judgment may be, the Supreme Court of the United States is the only federal court that could have jurisdiction to review a state court judgment." *Remer v. Burlington Area Sch. Dist.*, 205 F.3d 990, 996 (7th Cir. 2000). In other words, state court losers may not ask federal district courts to review and reverse their unfavorable state court judgments. The doctrine covers federal claims that directly seek to set aside a state court judgment. *Taylor v. Fed. Nat'l Mortg. Ass'n*, 374 F.3d 529, 532 (7th Cir. 2004). It may also cover claims that, although not raised in state court or not on their face requiring review of a state court's decision, are nevertheless "inextricably intertwined" with a state court judgment. *Id.* at 532-33. A federal claim is "inextricably intertwined" if it alleges the injury was caused by the state court judgment. *Id.* at 533. If the federal claim is "inextricably intertwined" and the plaintiff had a reasonable opportunity to raise the issue in state court, the federal court lacks subject matter jurisdiction. *Id.* Under the *Rooker-Feldman* doctrine, then, plaintiff may not ask a federal district court to overturn the state court foreclosure judgment that seems to be at the heart of his complaint, nor may he seek review and reversal indirectly in federal district court by raising "inextricably intertwined" claims that he had a reasonable opportunity to raise in state court.

I turn finally to address the matter of sanctions. Although both sets of defendants request an award of attorneys fees, neither followed the procedure set forth in Fed. R. Civ. P. 11 for obtaining such an award on a party's own motion. *See* Fed. R. Civ. P. (c)(1)(A). This is perhaps understandable since the cost of compliance with the rule may exceed any benefit they would ultimately obtain. But Rule 11 also permits the court to sanction a party in its own initiative when

it appears that a case has been brought for an improper purpose or asserts claims that have no basis in law or fact. Fed. R. Civ. P. 11(b). A court inclined to impose Rule 11 sanctions upon a party must afford that party an opportunity to show cause why he has not violated Rule 11(b).

Here, it appears that sanctions may be appropriate not only to compensate the parties who have been forced to incur attorneys fees to defend themselves against a frivolous lawsuit, but also to signal plaintiff that frivolous suits harm the judicial system. The Citi defendants have submitted copies of very similar complaints lodged in other federal courts in which the complaining party seeks to harass the Citi defendants for attempting to collect lawful debts. (Mot. to Dismiss, Dkt. #21, Exs. 1, 4.) These complaints assert violations of the FDCPA and state statutes, using the same boilerplate allegations—and many of the same grammatical errors—as the complaint filed by Wilkinson. It appears that a form for such a complaint is widely available on the Internet. (*Id.* Ex. 6 at 2.) In any case, regardless of where—or even whether—plaintiff obtained a form for his complaint, his filing of this complaint has wasted valuable judicial resources, and has also required defendants to expend time and money in response. A minimum of research into his claims—as this court expects from any litigant, even one who is proceeding pro se—would have revealed the major deficiencies discussed above. Requiring a party to pay costs in these circumstances might seem harsh, considering that a state court has entered a foreclosure judgment against him. Nevertheless, the financial woes of unsuccessful plaintiffs—even if so severe as to constitute indigence—do not shield them from having to pay costs.[6]

> Just as non-indigent litigants must consider the relative merits of their lawsuit
> against the pain an unsuccessful suit might inflict on their pocketbook, so must

---

[6] After reviewing Wilkinson's statement of assets and income, the court denied his request to proceed *in forma pauperis* in this action. (Order of December 18, 2006 at 1). Wilkinson subsequently paid the $350 filing fee.

[indigent litigants] learn to exercise discretion and judgment in their litigious activity and accept the consequences of their costly lawsuits. The imposition of costs against an unsuccessful litigant is analogous to a court ordering a criminal defendant to make restitution to his victim because the award of costs and restitution are both designed to compensate wronged parties . . . .

*McGill v. Faulkner*, 18 F.3d 456, 460 (7th Cir. 1994).

Plaintiff will therefore be ordered to show cause why Rule 11 sanctions should not be imposed.

**IT IS THEREFORE ORDERED** that defendants' motions to dismiss are **GRANTED**, all claims being dismissed with prejudice and with statutory costs to be determined by the court.

**IT IS FURTHER ORDERED** that plaintiff shall appear before this court on May 31, 2007, at 9:30 a.m. at its courtroom at 125 South Jefferson Street, Green Bay, Wisconsin and show cause why the court should not impose sanctions upon him for violating Rule 11(b) by filing a lawsuit that has no basis in law or fact for purposes of harassment or delay. Entry of judgment will await determination of the issue of sanctions.

Dated this ___9th___ day of May, 2007.

   s/ William C. Griesbach
William C. Griesbach
United States District Judge
